IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HORTENSIA PÉREZ-GONZÁLEZ, et al.,

Plaintiffs,

v.

MUNICIPALITY OF AÑASCO, et al.,

Defendants.

CIVIL NO.: 09-1560 (MEL)

**OPINION AND ORDER**

## I.      Procedural History

On January 12, 2010, a second amended complaint (the "complaint") was filed in the instant action against defendants Jorge Estevez-Martínez ("Estevez"), Herminio Martínez ("Martínez"), Carlos Ruiz ("Ruiz"), Monserrate Carrero Candelaria ("Carrero"), and the Municipality of Añasco by the following plaintiffs: Hortencia Pérez González, Manuel Rodríguez Morales, Diana Sánchez-Quintana, Marilyn Valentín-Ramírez, Jacqueline Ortiz-López, Héctor L. Rodríguez-Carrero, Jeffrey Feliciano, Waleska E. Malavé Carrero, Lydia Torres Escalón, Marisol Agostini-Rodríguez, Héctor L. Vargas-Nieto, Alejandro Durán-Ayala, Ariana Pérez-Soto, David Matos-Martínez, William Matías-Datiz, Moisés Colón-Gómez, Joel H. Román, Misael Lugo-González, Anabel Vélez-Rosado, Héctor Omar González-Angueira, Elizabeth Nieves-Nieves, Freddie de Jesús Ramírez, Dariana Toro-Malavé, Iris Pérez-Crespo, Sharayma Román-Vélez, Suhaill Martínez-Robles, José A. Morales-Torres, John S. Nieves-González, Jaime Vega-Santiago, Hilario Cruz-Quintana, Nelson M. Ruiz, Gilberto Román-Valentín, Melissa Matías-Matías, Santos Matías-Muñiz, Manuel

1

Rodríguez-Morales, Edwin Villanueva-Méndez, Michael A. Márquez-Zayas, Angel Ramos-Malavé, María J. Mangual-Fuentes, Celso Cruz-Babilonia, Jose A. Crespo, Norberto Carrero-Carrero, Rosa A. Rosado-Crespo, Glenis V. Oyarzabal-Soria, Luis A. Lugo-Rivera, Herminio Torres González, Miguel Hernández and Wilson Valentín-Cabán.[1] (Docket No. 31.)  Claiming, *inter alia*, that defendants targeted plaintiffs for discrimination due to their political affiliation, the complaint asserts federal causes of action pursuant to 42 U.S.C. § 1983 ("Section 1983") for violations of the First, Fifth and Fourteenth Amendments, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), as well as supplemental state law claims, to wit: Puerto Rico's Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146-151 ("Law 100"); Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, §§ 185 *et seq.* ("Law 80"); Law No. 44 of July 2, 1985, P.R. Laws Ann. tit. 1, §§ 502 *et seq.* ("Law 44"); Article 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31, §§ 5141, 5142; the Libel and Slander Law of February 19, 1902, P.R. Laws Ann., tit. 32,  §§ 3141 *et. seq.*; and Article II, §§ 1, 4, 6, 7, and 8 of the Constitution of the Commonwealth of Puerto Rico. Id.  Estevez and the Municipality of Añasco filed an answer on March 29, 2010, and the other named defendants joined their answer on April 21, 2010. (Docket Nos. 38; 39.)

The parties have since stipulated to a partial settlement agreement, whereby all claims brought by the following plaintiffs have been dismissed with prejudice: Marilyn Valentín, Waleska E. Malavé Carrero, Manuel Rodríguez Morales, Hortencia Pérez González, Marisol Agostini Rodríguez, Suhail Martínez Robles, Lydia Torres Escalón, Norberto Carrero Carrero, Jaime Vega Santiago, Gilberto Román Valentín, Celso Cruz Babiloni, José Crespo Lugo, Elizabeth Nieves,

---

[1] The complaint also names as defendants an unnamed individual, the spouses of Martínez, Ruiz, and Carrero, and the conjugal partnerships they comprise.  (Docket No. 31, ¶¶ 18-25.)

Herminio Torres González, Luis Lugo Rivera, Santos Matías Muñiz, Héctor O. González Angueiro, Hilario Cruz Quintana, Jeffrey Feliciano, Anabel Vélez Rosado, Misael Lugo González, Iris Y. Pérez Crespo, Angel Ramos Malavé, William Matías-Datiz and Melissa Matías Matías.  (Docket No. 83.) Pending before the court is defendants Estevez, Martínez, Ruiz and Carrero's motion for partial judgment on the pleadings – joined by the Municipality of Añasco – and the remaining plaintiffs' opposition.[2]  (Docket Nos. 58; 61; 68.)

## II.   Statement of Factual Allegations

Following several terms under New Progressive Party ("NPP") control, the Municipality of Añasco elected Popular Democratic Party ("PDP") candidate defendant Estevez mayor on November 4, 2008.  (Docket No. 31, ¶¶ 18, 27.)  Soon after Estevez took office in January 2009, he named defendant Martínez as Administrator of the Municipality, defendant Carrero as Director of Human Resources and defendant Ruiz as a supervisor at the Department of Recreation.  (Docket No. 31, ¶¶ 21, 27.)  Plaintiffs assert that "immediately" after being sworn in, Estevez implemented a policy of discrimination against municipal employees that had been retained from the prior administration and that were identified with the NPP and the former mayor.  (Docket No. 31, ¶  28.)  Specifically, plaintiffs assert that through defendants Martínez and Ruiz, the mayor undertook a pattern of discrimination against plaintiffs, relieving them of their duties, removing them from their offices, publicly and privately insulting them, accusing certain plaintiffs of committing crimes, and, in one case, physically assaulting one of the plaintiffs.  (See, e.g., Docket No. 31, ¶¶ 50-52, 75, 77, 117.) The complaint states that this discriminatory campaign was designed to force plaintiffs to resign so

---

[2]Throughout the remainder of this opinion and order, unless explicitly indicated otherwise, "plaintiffs" shall refer to those plaintiffs whose claims have not been dismissed pursuant to the partial settlement agreement entered on December 8, 2010.  (Docket Nos. 80; 82; 83.)

that the mayor could then fill their positions with PDP sympathizers.  (Docket No. 31, ¶ 30.)

Further, plaintiffs allege that they reported the discriminatory conduct by defendant Martínez to the

mayor, but that Estevez failed to put a stop to it.  (Docket No. 31, ¶ 31.)  In fact, plaintiffs assert that

in a radio interview the mayor "boasted" that Martínez was doing the job that Estevez had ordered

him to do.[3]  (Docket No. 31, ¶ 31.)

## III.    Legal Analysis

### A.    Judgment on the Pleadings Standard

Rule 12(c) of the Federal Rules of Civil Procedure states that, "[a]fter the pleadings are

closed — but early enough not to delay trial — a party may move for judgment on the pleadings."

Fed. R. Civ. P. 12(c).  The First Circuit has held that "[t]he standard for evaluating a motion to

dismiss is the same as that for a motion for judgment on the pleadings."  Remexcel Managerial

Consultants, Inc. v. Arlequin, 583 F.3d 45, 49 n.3 (1st Cir. 2009).

In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court held that to survive

a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief."

Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007) (quoting Twombly, 550

U.S. at 599).  The court accepts all well-pleaded factual allegations as true, and draws all reasonable

---

[3] The complaint states that the following allegations regarding Estevez's pattern of discrimination apply to all plaintiffs: "[t]he pattern of discrimination consisted in [sic] removing them from their offices and ordering them to work from places which are tantamount to working next to a garbage dump, removing them from their offices and not assigning them a place to work, relieving them of their duties, publicly and privately insulting them, publicly and privately demeaning them, accusing them of being members of the opposing [NPP], assigning them tasks that are physically impossible for them to execute, expressing to the herein plaintiffs that they lack their trust, accusing them of being lackeys of the former Mayor, screaming and insulting them, proffering curse words to them, in the specific case of two plaintiffs herein, accusing them of having committing [sic] felonies and even physically assaulting one of the herein plaintiffs." (Docket No. 31, ¶ 9.) However, a reading of the complaint indicates that not every plaintiff is in fact making all of the allegations listed above.  For example, only plaintiff Ortiz-López brings claims based on the allegation that she was  "assign[ed] ... tasks that are physically impossible for them to execute."  (Docket No. 31, ¶¶ 64-72, 134.)   The court will not speculate as to which of these general allegations apply to which plaintiff.  Therefore, for purposes of this motion, the court will only consider the allegations pled by the individual plaintiffs.  (Docket No. 31, ¶¶ 34-124.)

inferences in plaintiff's favor.  See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990).  While Twombly does not require of plaintiffs a heightened fact pleading of specifics, it does require enough facts to have "nudged their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555.  However, the First Circuit has recently cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 2010 U.S. App. LEXIS 25228, at *11 (1st Cir. Dec. 10, 2010) (citing Twombly, 550 U.S. at 556).

In Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court upheld Twombly and clarified that two underlying principles must guide this court's assessment of the adequacy of a plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S.Ct. at 1949-50.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."[4]  Iqbal, 129 S.Ct. at 1950 (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility.  Iqbal, 129 S.Ct. at 1950.  Determining the existence of

[4]The First Circuit has recently relied on these two principles as outlined by the Supreme Court.  See Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009).

plausibility is a "context-specific task" which "requires the court to draw on its judicial experience and common sense." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).  Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation."  Id. at 1950-51 (citing Twombly, 550 U.S. at 567).

### B.    Plaintiffs' Claims Under Section 1983

Plaintiffs seek redress for violations of the First, Fifth and Fourteenth Amendments under Section 1983, which allows individuals within the United States to vindicate substantive rights under the United States Constitution and federal laws through a civil action in federal court.  See Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 F.3d 137, 144 n.3 (1979)).  Under Section 1983, plaintiffs must first show that "the conduct complained of was committed by a person acting under color of state law." Destek Group, Inc. v. State of New Hampshire Public Utilities Commission, 318 F.3d 32, 39 (1st Cir. 2003). Plaintiffs then must demonstrate that the defendants' conduct deprived them of rights, privileges, or immunities secured by the Constitution of the United States.  Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989). "To satisfy the second element, plaintiffs must show that the defendants' conduct was the cause in fact of the alleged deprivation." Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).

Supervisors may only be held liable under the statute on the basis of their own acts or omissions; supervisory liability cannot be predicated on a respondeat superior theory.  Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005); see Iqbal, 129 S. Ct. at 1948 ("because vicarious

liability is inapplicable to ... [Section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Thus, supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization of a subordinate's actions or omissions. See Whitfield, 431 F.3d at 14 (citing Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)).

As to claims against municipalities, just as with government officials a municipality cannot be held liable for the constitutional violations of municipal employees on a respondeat superior theory. See Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 770 (1st Cir. 2010) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Instead, liability attaches to a municipality under Section 1983 "only if the violation occurs pursuant to an official policy or custom." Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008). A plaintiff can establish an official policy "by showing that the alleged constitutional injury was caused by . . . a person with final policymaking authority." Id.; see also Rodríguez-García, 495 F.3d at 13 ("[i]t is well established that the deliberate acts or omissions of a municipal policymaker with final authority over the subject matter in question may expose the municipality itself to liability."). Under Puerto Rico law, mayors "are the government officials ultimately responsible for employment decisions of the municipality." Miranda-Marín, 610 F.3d at 770 (citation omitted). Therefore, if plaintiffs prove Section 1983 claims against Estevez due to the mayor's acts, statements or decisions, the Municipality of Añasco would also be liable.

1.     Claims Under Fifth and Fourteenth Amendment

In support of plaintiffs' claims that defendants violated their rights under the Fifth and Fourteenth Amendments, plaintiffs include in their complaint only a single allegation that "[t]he

7

conduct displayed by [d]efendants in harassing, persecuting, discriminating and taking adverse employment actions ... against plaintiffs, was due to their political affiliation and total disregard of the due process of law, a willful violation of the rights protected by the Fifth and Fourteenth Amendments of the Constitution of the United States." (Docket No. 31, ¶ 126.) Under the standard set forth in Iqbal, the court will not entertain claims supported only by conclusory allegations. See Iqbal, 129 S.Ct. at 1949 (dismissal proper where pleading comprised of "labels and conclusions" and "naked assertion[s] devoid of further factual enhancement") (quotation omitted). Furthermore, as this case concerns actions taken by a municipality and its employees – not federal actors – the Fifth Amendment is inapplicable. See Martínez-Rivera v. Sánchez-Ramos, 498 F. 3d 3, 8 (1st Cir. 2007) (affirming dismissal of plaintiffs' claims under the Fifth Amendment because the police officers were state – not federal – actors). Accordingly, plaintiffs' claims pursuant to the Fifth and Fourteenth Amendments are hereby DISMISSED with prejudice.

    2.    <u>First Amendment - Political Discrimination</u>

As to plaintiffs' First Amendment claims, the First Circuit has held that "[t]he right to associate with the political party of one's choice is an integral part of the basic constitutional freedom to associate with others for the common advancement of political beliefs and ideas protected by the First Amendment." Carrasquillo v. Puerto Rico, 494 F.3d 1, 4 (1st Cir. 2007) (citing Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973)). Therefore, employees "generally enjoy protection from adverse employment actions based on their political affiliations." Id. (citing Branti v. Finkel, 445 U.S. 507, 517-19 (1980). To prevail on a claim of political discrimination, a plaintiff must establish that I) plaintiff and defendant belong to opposing political affiliations, ii) the defendant has knowledge of plaintiff's political affiliation, iii) a challenged employment action occurred, and iv)

plaintiff's political affiliation was a substantial or motivating factor behind it.  See Welch, 542 F.3d at 938-39 (citing Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006)).

Defendants argue that plaintiffs' Section 1983 claim should be dismissed due to plaintiffs' failure to sufficiently plead that defendants were aware of each plaintiff's political affiliation and because the facts alleged do not establish that the defendants' conduct constitutes adverse employment actions.[5]  (Docket No. 58, pp. 13, 15-16, 18-19.)  Plaintiffs maintain that the allegations contained in the complaint sufficiently establish defendants' knowledge of plaintiffs' political affiliation and counter that defendants' conduct toward plaintiffs, while in most cases falling short of termination, nevertheless constitutes actionable adverse employment actions.  (Docket No. 68, pp. 10, 22, 27-28, 30-31.)

a.    Knowledge of Political Affiliation

While not necessarily disputing that plaintiffs and defendants belong to opposing political parties, defendants contend that plaintiffs' Section 1983 claims should be dismissed for failing to adequately plead that defendants were aware of plaintiffs' political affiliation.  (Docket No. 58, p. 13.)

The following plaintiffs attempt to establish that the defendants knew of their political affiliation based solely on the blanket allegation that they are "all publicly identified as members of the New Progressive Party": Ariana Pérez-Soto, David Matos-Martínez, William Matías-Datiz, Moisés Colón-Gómez, Joel H. Román, Freddie de Jesús Ramírez, Sharayma Román-Vélez, José A. Morales-Torres, Nelson M. Ruiz, Edwin Villanueva-Méndez, Michael A. Márquez-Zayas, María J.

_____

[5] Defendants also maintain that plaintiffs' claims are barred by the Eleventh Amendment.  (Docket No. 38, p. 9.)  However, municipalities and their officers do not fall under this amendment's protections. See Cosme-Perez v. Municipality of Juana Diaz, 2008 U.S. Dist. LEXIS 97020, at *14-*15 (D.P.R. July 2, 2008).

Mangual-Fuentes, Rosa A. Rosado-Crespo, Glenis V. Oyarzabal-Soria, Miguel Hernández and Wilson Valentín-Cabán.  (Docket No. 31, ¶ 120.)   The mere allegation that a defendant knew of plaintiff's political affiliation, without providing facts as to the source of that knowledge, is insufficient to satisfy plaintiff's burden.  See Velázquez v. Hernández, 2010 U.S. Dist. LEXIS 90337, at *17-*18 (D.P.R. Aug. 27, 2010); Rodríguez-Díaz v. Marrero-Recio, 2010 U.S. Dist. LEXIS 111901, at *15-*16 (D.P.R. Oct. 20, 2010) (dismissing Section 1983 claims under Iqbal based on conclusory allegation that plaintiffs'"political affiliation to the PDP was well known by his co-workers, particularly those who are named as defendants in this action."); Rivera Feliciano v. State Ins. Fund Corp., 652 F. Supp. 2d 170, 186 (D.P.R. 2009) (plaintiff's allegations that he is "an active member of the NPP and that his affiliation is well known by the defendants" found to be conclusory under Iqbal).  Therefore, as the aforementioned plaintiffs have failed to plead an essential element of a political discrimination claim, said plaintiffs' claims under Section 1983 are hereby DISMISSED.

As to plaintiffs Sánchez-Quintana, Ortiz-López, and Vargas-Nieto, the complaint states only that each plaintiff was "publicly identified with the New Progressive Party, for whose candidate [he or she] publicly expressed [his or her] support and campaigned for during the past elections." (Docket No. 31 ¶¶ 49, 65, 108.)  As stated above, conclusory statements that a plaintiff is "publicly identified" with a particular political party, absent facts as to the source of that knowledge, do not satisfy the pleading standard under Iqbal.  See Velázquez, 2010 U.S. Dist. LEXIS 90337, at *17-*18. Here, plaintiffs' vaguely worded allegations fail to provide such support.  "[P]ublicly express[ing] ... support" and "campaign[ing]" for a candidate are such nebulous terms that the court would be forced to speculate as to how the defendants became aware of each plaintiff's political affiliation,

something the court will not do.  See Parker v. Hurley, 514 F.3d 87, 95 (1st Cir. 2008) ("[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true.") (quoting Twombly, 127 S. Ct. at 1965); see Jiménez-González v. Alvarez-Rubio, 683 F. Supp. 2d 177, 183 (D.P.R. 2010) (plaintiff's political discrimination claim dismissed where court determined that allegations that he was a member of the PDP party, had been "actively involved in the campaign of the PDP candidate for mayor of his hometown," had worked as an electoral commissioner, and that many of his coworkers had witnessed his involvement in PDP campaigns, were insufficient under Iqbal to demonstrate that defendants knew of his party affiliation, as the court could not infer that such knowledge had "automatically passed" on to defendants).  Therefore, as the aforementioned plaintiffs have failed to plead an essential element of a political discrimination claim, said plaintiffs' claims under Section 1983 are hereby DISMISSED.

As to plaintiffs Rodríguez-Carrero and Durán-Ayala, the complaint includes both the same general allegation that each was "publicly identified with the New Progressive Party, for whose candidate he publicly expressed his support and campaigned for during the past elections[,]" as well as additional factual allegations demonstrating the source of individual defendant's knowledge of plaintiffs' political affiliation.  (Docket No. 31, ¶¶ 74-76, 114-116.)  Regarding Rodríguez-Carrero, the complaint states that he confronted the mayor upon learning that his work hours were being reduced while pro-PDP employees hours were being increased.  (Docket No. 31, ¶ 76.)  Following this incident – of which a reasonable inference could be made that the topic of Rodríguez-Carrero's political affiliation was raised – Rodríguez-Carrero was notified of his termination "solely and exclusively for being a member of the [NPP]."  (Docket No. 31, ¶ 78.)  These allegations are

11

sufficient, for purposes of defeating a motion for judgment on the pleadings, to infer that defendant Estevez was aware of plaintiff Rodríguez-Carrero's political affiliation.

Regarding plaintiff Durán-Ayala, the complaint states that during a meeting with the mayor in January 2009, Estevez informed him that "the members of the [PDP] of Añasco want your head, they want me to fire you or that I move you the farthest possible from City Hall." (Docket No. 31, ¶ 116.)  Durán-Ayala was subsequently transferred to the Department of Public Works and stripped of his duties.  (Docket No. 31, ¶ 117.)  Furthermore, the complaint states that following his transfer, defendant Carrero harassed Durán-Ayala by, among other things, denying him entry to the human resources and finance departments, and by "publicly humiliating" him during celebrations for the municipality's secretaries.  (Docket No. 31, ¶ 118.)  Given the mayor's alleged revelation that the members of the PDP were specifically targeting Durán-Ayala, the court finds that such allegations support a finding that both Estevez and Carrero were aware of plaintiff Durán-Ayala's political affiliation.

      b.    <u>Adverse Employment Action</u>

Courts determine whether an employer's conduct constitutes an adverse employment action under Section 1983 based on whether "objectively evaluated, [it] would 'place substantial pressure on even one of thick skin to conform to the prevailing political view.'" <u>Bergeron v. Cabral</u>, 560 F.3d 1, 8 (1st Cir. 2009) (<u>quoting Agosto-de-Feliciano v. Aponte-Roque,</u> 889 F.2d 1209, 1218 (1st Cir. 1989) (en banc)), <u>abrogated on other grounds by</u> <u>Maldonado v. Fontanes</u>, 568 F.3d 263 (1st Cir. 2009).  Under this standard, it is well-settled that outright dismissal of non-policymaking public employees constitutes an adverse employment action.  <u>Id.</u>; <u>see</u> <u>Galloza v. Foy</u>, 389 F.3d 26, 28 (1st Cir. P.R. 2004) ("a government employer cannot discharge public employees merely because they

are not sponsored by or affiliated with a particular political party.").

Furthermore, actions short of dismissal or demotion, such as denials of promotions and transfers, can also constitute adverse employment actions.  See Miranda-Marín, 610 F.3d at 766 (citing Rutan v. Repub. Party of Ill., 497 U.S. 62, 75 (1990)).  This standard is met "when the employer's challenged actions result in a work situation 'unreasonably inferior' to the norm for the position."  Agosto-de-Feliciano, 889 F.2d at 1218.  When deciding whether a challenged employment action has created unreasonably inferior conditions, "[a]ctual functions of the job, not titles, control, and an official description of job functions is a presumptively reliable basis for determining those functions." López-Quiñones v. P.R. Nat. Guard, 526 F.3d at 26 (1st Cir. 2008) (citing Olmeda v. Ortiz-Quinonez, 434 F.3d 62, 66 (1st Cir.2006)). Generally, "an employee must show a permanent, or at least sustained, worsening of conditions to reach the threshold of constitutional injury.  If, however, a temporary change in duties is so inappropriate as to be demeaning and persists ... the severity threshold may be met."  Carrasquillo-Gonzalez v. Sagardia-De-Jesus, 2010 U.S. Dist. LEXIS 71800, at *11 (D.P.R. July 14, 2010) (quoting Agosto-de-Feliciano, 889 F.2d at 1219).  Also, a court may consider additional factors such as "lost access to telephone and photocopier, poorer office accouterments, [and] worse hours" when deciding if the threshold of constitutional injury has been reached.  Id.

In this case, plaintiffs Rodríguez-Carrero and Durán-Ayala assert that actions taken by defendants due to plaintiffs' affiliation with the NPP rose to the level of adverse employment actions. (Docket No. 68, pp. 6-7.)  Regarding Rodríguez-Carrero, the complaint states that, among other things, plaintiff was terminated "solely and exclusively for being a member of the [NPP.]" (Docket No. 31, ¶ 78.)  Courts have found that termination motivated by political discrimination

qualifies as an adverse employment action.  See Galloza, 389 F.3d at 28. While the complaint does not state who specifically fired Rodríguez-Carrero, under Puerto Rico law, mayors "are the government officials ultimately responsible for employment decisions of the municipality." Miranda-Marin, 610 F.3d 756, 770 (quoting Rodriguez-Garcia v. Municipality of Caguas, 495 F.3d 1, 3 (1st Cir. 2007)).  Therefore, the court finds that plaintiff Rodríguez-Carrero has sufficiently pled a Section 1983 claim against defendant Estevez and – by extension – the Municipality of Añasco.

As for Durán-Ayala, plaintiff alleges that following a meeting with the mayor in which he was informed that members of the PDP wanted him to fire or transfer plaintiff, Durán-Ayala was transferred to the remote Department of Public Works, where he was given no tasks to perform. (Docket No. 31, ¶ 117.)  The court finds such allegations to be sufficient to meet the pleading requirements, as they reflect a change in plaintiff's work environment that "would place substantial pressure on even one of thick skin to conform to the prevailing political view." Agosto-de-Feliciano, 889 F.2d at 1218; see Marrero-Saez v. Municipality of Aibonito, 668 F. Supp. 2d 327, 332-333 (D.P.R. 2009) (motion to dismiss Section 1983 claim denied where plaintiff asserted that she was demoted, deprived of her duties, and subjected to unreasonably inferior work conditions).  Thus, the court finds that plaintiff Durán-Ayala has adequately pled a Section 1983 claim against Estevez and the Municipality of Añasco.

However, plaintiff Durán-Ayala's allegations concerning Carrero's conduct do not rise to such a level.  Durán-Ayala claims that Carrero i) once expelled him from the human resources department and from the finance department, ii) prevented plaintiff from revising his personnel file, and iii) "publicly humiliat[ed]" him during celebrations for the municipality's secretaries.  (Docket No. 31, ¶ 118.)  First, plaintiff's claims of public humiliation too vague and conclusory.  See Iqbal,

14

129 S. Ct. at 1949.  Further, denying an employee entrance to the human resources and finance department on one or two occasions does not rise to the level of constitutional injury.  See Agosto-de-Feliciano, 889 F.2d at 1219 ("in general, an employee must show a permanent, or at least sustained, worsening of conditions to reach the threshold of constitutional injury.").  Finally, plaintiff nowhere alleges that other employees in the Department of Public Works were granted the authority to revise, edit or amend  their own personnel files, and therefore that his working conditions were "unreasonably inferior" to the norm for that position.  See Agosto-de-Feliciano, 889 F.2d at 1218. Thus, as plaintiff Durán-Ayala does not sufficiently set forth that Carrero's conduct constituted an adverse employment action, Durán-Ayala's claims against said defendant under Section 1983 are hereby DISMISSED.

Based on the foregoing, plaintiffs Rodríguez-Carrero and Durán-Ayala have set forth sufficient allegations under Section 1983 against Estevez and the Municipality of Añasco to survive dismissal.  Accordingly, defendants' motion (Docket Nos. 58; 61) is hereby DENIED as to these plaintiffs' Section 1983 claims against the aforementioned defendants.  Defendants' motion is hereby GRANTED as to plaintiffs Rodríguez-Carrero and Durán-Ayala's claims under Section 1983 against the other defendants, and with regard to the following plaintiffs' claims under Section 1983  against all defendants: Sánchez-Quintana, Ortiz-López, Vargas-Nieto, Ariana Pérez-Soto, David Matos-Martínez, William Matías-Datiz, Moisés Colón-Gómez, Joel H. Román, Freddie de Jesús Ramírez, Sharayma Román-Vélez, José A. Morales-Torres, Nelson M. Ruiz, Edwin Villanueva-Méndez, Michael A. Márquez-Zayas, María J. Mangual-Fuentes, Rosa A. Rosado-Crespo, Glenis V. Oyarzabal-Soria, Miguel Hernández and Wilson Valentín-Cabán.

### C.     Plaintiffs' ADA Claim

Defendants argue that plaintiffs' claims brought pursuant to the ADA should be dismissed because plaintiffs have failed to exhaust their administrative remedies before the EEOC.  (Docket No. 58, pp. 22-23.)  The ADA mandates that prior to filing suit in federal district court, a plaintiff must "compl[y] with the administrative procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e." Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277 (1st Cir. 1999). Plaintiffs concede that they have not satisfied this requirement, and therefore withdraw this claim. (Docket No. 68, p. 33.)  Accordingly, plaintiffs' ADA claims against all defendants are hereby DISMISSED for failure to exhaust administrative remedies.

### D.     Plaintiffs' Pendent State Law Claims

Premised on the same set of facts giving rise to their Section 1983 claims, plaintiffs assert pendent state law claims under the following laws: Law 100, Law 80, Articles 1802 and 1803, Law 44, Puerto Rico's libel and slander statute, and various sections of the Puerto Rico Constitution.[6] (Docket No. 31, ¶¶ 1, 131-136.)  The court declines to exercise supplemental jurisdiction over the state law claims of plaintiffs whose federal claims have been dismissed.  See Mercado v. Hosp. Cayetano Coll Y Toste, 2010 U.S. Dist. LEXIS 89716, at *24-*25 (D.P.R. Aug. 25, 2010);

---

[6] Plaintiffs' claims under Puerto Rico's libel and slander statute are brought only by plaintiff Rodríguez-Morales, whose claims have since been dismissed with prejudice under the terms of the partial settlement agreement. (Docket No. 83.)  Defendants' motion (Docket Nos. 58; 61) is therefore MOOT with regard to this claim.  In addition, only plaintiff Ortiz-López brings a claim under Law 44.  (Docket No. 31, ¶ 134.)  Since all federal claims against this plaintiff have been dismissed herein, the court declines to exercise supplemental jurisdiction over this claim.  See Mercado, 2010 U.S. Dist. LEXIS 89716, at *24-*25.  To the extent plaintiffs Rodríguez-Carrero and Durán-Ayala's claims under Article II, §§ 1, 4, and 6 mirror the preceding analysis under Section 1983, the court hereby DENIES defendants' motion.  See P.R. Laws Ann. Const. Art. II, §§ 1, 4, 6.  As to said plaintiffs' claims under Article II, §§ 7 and 8 of the Constitution of the Commonwealth of Puerto Rico, the court hereby GRANTS defendants' motion, as plaintiffs fail to support their claim with any factual allegations anywhere in their pleadings or brief in opposition. (Docket No. 31, 68.)  Under Iqbal, conclusory statements such as these do not survive dismissal.  129 S. Ct. at 1949.

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349 (1988) (explaining that the exercise of pendent jurisdiction is a matter of the federal court's discretion and not one of plaintiff's rights); United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966) (stating "if the federal claims are dismissed before trial, ... the state law claims should be dismissed as well."). Accordingly, the following plaintiffs' claims brought pursuant to Commonwealth law are DISMISSED WITHOUT PREJUDICE: Sánchez-Quintana, Ortiz-López, Vargas-Nieto, Ariana Pérez-Soto, David Matos-Martínez, William Matías-Datiz, Moisés Colón-Gómez, Joel H. Román, Freddie de Jesús Ramírez, Sharayma Román-Vélez, José A. Morales-Torres, Nelson M. Ruiz, Edwin Villanueva-Méndez, Michael A. Márquez-Zayas, María J. Mangual-Fuentes, Rosa A. Rosado-Crespo, Glenis V. Oyarzabal-Soria, Miguel Hernández and Wilson Valentín-Cabán.

1.    Law 100

Puerto Rico's Law 100 prohibits discrimination by an employer in the workplace by reason of age, race, color, religion, sex, social or national origin or social condition.  See 29 P.R. Laws Ann. §146.  The statute defines an employer as:

> any natural or artificial person employing laborers, workers or employees, and the chief, official manager, officer, managing partner, administrator, superintendent, foreman, overseer, agent or representative of such natural or artificial person.  It shall include all such agencies or instrumentalities of the Government of Puerto Rico as may be operating as private businesses or enterprises.

Hernandez-Payero v. Puerto Rico, 338 F.Supp.2d 279, 282 (D.P.R. 2004) (citing P.R. Laws Ann. tit. 29, § 151 (1995)).  Since a municipality does not operate as a private business or enterprise, courts have found Law 100 inapplicable to cases involving municipalities and municipal officers. See Rodriguez Cruz v. Padilla Ayala,1990 WL 657488 (P.R. Feb. 12, 1990) ("a 'municipality' does not operate for profit, as do private businesses, but for public service purposes. ... Consequently, Act

No. 100 does not apply to municipalities."); <u>Marin-Piazza v. Aponte-Roque</u>, 873 F.2d 432, 436 (1st Cir. 1989); <u>Rodriguez Sostre v. Municipio de Canovanas</u>, 203 F. Supp. 2d 118, 119 (D.P.R. 2002). Therefore, plaintiffs Rodríguez-Carrero and Durán-Ayala's claims under Law 100 are hereby DISMISSED.

     2.    <u>Law 80</u>

Plaintiff Rodríguez-Carrero brings a claim for wrongful termination under Law 80. (Docket No. 31, ¶ 136.)   In their opposition, plaintiffs clarify that this claim is brought only against the Municipality of Añasco.  (Docket No. 68, p. 32.)   Under Law 80, an employee who is discharged without just cause is entitled to receive severance pay from his employer.  <u>See</u> P.R. Laws Ann., tit. 29, § 185a.  The employee bears the initial burden of alleging an unjust dismissal and of proving actual dismissal.  <u>See</u> <u>Medina v. Adecco</u>, 561 F. Supp. 2d 162, 174 (D.P.R. 2008).  Plaintiff Rodríguez-Carrero contends that following a confrontation with the mayor regarding the reduction of his work hours, he was notified that he was being terminated from his employment "solely and exclusively for being a member of the [NPP.]" (Docket No. 31, ¶¶ 76, 78).  Further, plaintiff alleges that he received high marks on his employment evaluations, that he was one of the more senior employees in his department, and that he was the only employee in his department who was terminated.  (Docket No. 31, ¶ 79.)  Such allegations satisfy the pleading requirements for a Law 80 claim.  Therefore, defendants' motion (Docket Nos. 58; 61) as to plaintiff Rodríguez-Carrero's Law 80 claim is hereby DENIED.

     3.    <u>Articles 1802 and 1803</u>

The complaint also asserts claims under Articles 1802 and 1803 of the Civil Code of Puerto Rico against "the defendants for any and all damages suffered by plaintiffs as a result of their

negligent acts and/or omissions." (Docket No. 31, ¶ 133.) In their opposition, plaintiffs attempt to rectify this broadly worded claim by stating that this cause of action relates specifically to plaintiff Rodríguez-Carrero's claims that defendant Estevez "falsely and maliciously" accused plaintiff of breaking the window of a municipal vehicle.[7] (Docket No. 68, p. 33.) However, there is nothing in the complaint to support such a reading (Docket No. 31), and such vague and conclusory pleadings do not survive under Iqbal. 129 S. Ct. at 1949. Therefore, defendants' motion (Docket Nos. 58; 61) as to plaintiffs Rodríguez-Carrero and Durán-Ayala's claims under Articles 1802 and 1803 is hereby GRANTED.

## IV. Conclusion

In view of the foregoing, defendants' motion (Docket Nos. 58; 61) is hereby GRANTED IN PART and DENIED IN PART, as follows:

1.   plaintiffs' claims for violation of the Fifth and Fourteenth Amendments are hereby DISMISSED for failure to state a claim upon which relief can be granted;

2.   defendants' motion is hereby GRANTED IN PART and DENIED IN PART with respect to plaintiffs' Section 1983 claims. Said motion is DENIED with respect to plaintiffs Rodríguez-Carrero and Durán-Ayala's claims against defendant Estevez and the Municipality of Añasco and GRANTED as to said plaintiffs' claims against other defendants and as to the following plaintiffs claims against all defendants for failure to state a claim upon which relief can be granted: Sánchez-Quintana, Ortiz-López, Vargas-Nieto, Ariana Pérez-Soto, David Matos-Martínez, William Matías-Datiz, Moisés Colón-Gómez, Joel H. Román, Freddie de

---

[7] Plaintiffs also state that the Article 1802 and 1803 claims relate to actions taken by defendant Martínez against plaintiff Sánchez-Quintana. (Docket No. 68, p. 33.) However, as plaintiff Sánchez-Quintana's federal claims have been dismissed herein, the court declines to exercise supplemental jurisdiction over this claim. See Mercado, 2010 U.S. Dist. LEXIS 89716, at *24-*25.

Jesús Ramírez, Sharayma Román-Vélez, José A. Morales-Torres, Nelson M. Ruiz, Edwin Villanueva-Méndez, Michael A. Márquez-Zayas, María J. Mangual-Fuentes, Rosa A. Rosado-Crespo, Glenis V. Oyarzabal-Soria, Miguel Hernández and Wilson Valentín-Cabán;

3.   plaintiffs' ADA claims against all defendants are hereby DISMISSED for failure to exhaust administrative remedies;

4.   all state law claims brought by the following plaintiffs are hereby DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367: Sánchez-Quintana, Ortiz-López, Vargas-Nieto, Ariana Pérez-Soto, David Matos-Martínez, William Matías-Datiz, Moisés Colón-Gómez, Joel H. Román, Freddie de Jesús Ramírez, Sharayma Román-Vélez, José A. Morales-Torres, Nelson M. Ruiz, Edwin Villanueva-Méndez, Michael A. Márquez-Zayas, María J. Mangual-Fuentes, Rosa A. Rosado-Crespo, Glenis V. Oyarzabal-Soria, Miguel Hernández and Wilson Valentín-Cabán;

5.   plaintiffs Rodríguez-Carrero and Durán-Ayala's claims under Law 100 are hereby DISMISSED for failure to state a claim upon which relief can be granted;

6.   defendants' motion is hereby DENIED with respect to plaintiff Rodríguez-Carrero's claim against the Municipality of Añasco under Law 80;

7.   plaintiffs Rodríguez-Carrero and Durán-Ayala's claims under Article 1802 and 1803 claims are hereby DISMISSED for failure to state a claim upon which relief can be granted; and

8.   defendants' motion is hereby DENIED with respect to plaintiffs Rodríguez-Carrero and Durán-Ayala's claims under Article II, §§ 1, 4, 6 of the Constitution of the Commonwealth of Puerto Rico and  GRANTED as to said plaintiffs' claims under Article II, §§ 7 and 8 of

the Constitution of the Commonwealth of Puerto Rico for failure to state a claim upon which

relief can be granted.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 17th day of December, 2010.

s/Marcos E. López
U.S. Magistrate Judge

21